Good afternoon. We'll first turn to the Substantive Motions Calendar. We only have one argument. That's in Upstate Jobs Party et al. v. Koskinski. Good afternoon, Your Honor. Sean Sheehy on behalf of the Plaintiff Appellants, John Bullis, Martin Babinick, and the Upstate Jobs Party. May it please the Court. First, Your Honor, if I may, I would respectfully request one minute for rebuttal. Thank you very much, Your Honor. The motion to expedite should be granted to avoid the continuing irreparable harm that plaintiffs are currently suffering. The District Court below held, and the defendants in their opposition brief provided no opposition, that plaintiff appellants made a strong showing of irreparable harm absent the grant of the injunction. Therefore, if the motion to expedite is in fact denied, the irreparable harm will become permanent as plaintiff appellants will not be able to bring or try to obtain party status for another four years. To therefore provide meaningful appellate review, this Court should grant the motion to expedite. Is that the principle or only remedy that you're asking from us? All we are asking for today, Your Honor, is granting the motion to expedite and set an expedited briefing schedule. We have filed our opening brief. It is on file with the Court. We filed it yesterday, and we would ask that the Court set an expedited briefing schedule such that the Court can issue a ruling on the merits in time for the beginning of the independent nominating petition process, which begins on July 10th. Why is that date critical to you? Thank you, Your Honor. It's critical to us because we, in our affidavits below, that we're uncontested, uncontroverted. Upstate Jobs Party needs the ability to coordinate with their gubernatorial candidate in an unlimited manner, just the same as parties are able to do. Why can't you do it now? Your Honor, thank you. We can do it now. The point here is . . . Your Honor, what we need is the ability to provide support to our candidates. Lerman v. . . Why can't you do that? So Lerman v. New York State Board of Elections, Second Circuit case, ruled that the petitioning process is both costly and formidable, particularly upon minor parties. What is it you can't do? We cannot provide sufficient support to our gubernatorial candidate. What does that mean, sufficient? What is it you can't do? We cannot provide sufficient funds to our candidate. What prevents you from providing sufficient funds? The statute prohibits us from contributing more than $44,000 to our gubernatorial candidate, whereas the party committees are able to coordinate unlimited amounts of money with their candidates. So we are at a stark disadvantage. Do you have people ready to give more than $44,000? Yes, Your Honor. Martin Babbitt . . . Martin Babbitt's affidavit, Your Honor, explicitly says that he's ready and willing to contribute above the $44,000 to assist the candidate in its petitioning process. So how much time would they have for their brief? You want the decision by July 14th? By July 10th, Your Honor, yes. So you not only want his time pressed, you want our time pressed. Your Honor, we are respectfully asking . . . Is there any support for the argument that an appellate court can be given, can be told by an appellate, how much time it has to write a decision? In New York Progress and Protection PAC, Your Honor, that case involved actually a motion . . . it involved an appeal that was filed in late October, on October 17th, and the court actually heard oral argument on it on October 18th, very next day, and then rendered a decision on October 24th. I don't doubt that we can write a decision quickly. My question was, has any appellate ever gotten an order requiring us to do so? Your Honor, I don't believe that . . . I know of an order requiring the court to issue a decision, but we are respectfully requesting that the court issue its decision in time for the July 10th petition process. That's a pretty extraordinary remedy, isn't it? Your Honor, it was . . . this is a First Amendment case under New York Progress and Protection PAC and L. Rod V. Burns . . . Pentagon Papers . . . nobody told the Second Circuit how quickly to rule. They just ruled when they thought they should rule. So did the Supreme Court. Well, here, in the First Amendment context, irreparable harm happens even when speech is squelched for but a moment. Well, what if July 10th comes and goes and you don't get a decision until July 30th? Can't your man still make his contribution in excess of $44,000 a week later? We need to be able to obtain 318 signatures a day at least . . . Nothing prevents you from doing that. At least that many amount. Nothing prevents us from doing that right now. But, Your Honor, my point is this . . . is that we have to be able to obtain at least 45,000 signatures and that takes . . . If nothing prevents you from doing it, then you don't need that rigid schedule that denies them even a . . . well, not even a normal briefing period. It doesn't even give them 30 days according to your schedule. And, Your Honor, we would be happy to do something along the lines of 14 days . . . for them to file their opposition brief 14 days from yesterday. We just want to be in a position that the court can hear oral argument and have the ability to render a decision by July 10th. And, Your Honor, we would suggest that . . . And, I see that I'm out of time. I'm sorry, Your Honor. If I can . . . And, Your Honor, what we need is that ability to obtain the massive amount of signatures statewide . . . And, without adequate funds to do that early on, we're coming up on a deadline of . . . in August, to submit 40 . . . about 45,000 signatures to . . . I understand. You can start getting petitions today, can't you? We cannot start getting petitions today, Your Honor. We have to wait until July 10th to begin that process. On July 10th, you can do it. Nothing stands in your way. Nothing stands in the way, Your Honor, of us beginning the petition process. And, your funder and your man who wants to give 44,000 can give 44,000 on that day. In fact, he could give it today, right? He would be able to, Your Honor, but that fact was not material in New York Progress and Protection Pact . . . where Sean McCutcheon, the donor in that case, said that he would contribute $200,000, $50,000 above the $150,000 limit. And, he didn't contribute anything until the injunction . . . Nothing prevents him from giving 44,000 today, does it? Nothing prevents him from being able to do that, Your Honor. Is there any explanation, apparent from the record, for why we haven't seen you before now? I mean, why are you here on an emergent basis in this compressed time frame? We are here, Your Honor. We filed our complaint in the Northern District of New York on April 13th. The court granted expedited briefing and rendered its decision on May 22nd. You saw this coming down the path, some time ago, right? Certainly, Your Honor. The timeliness factor, however, as New York Progress and Protection Pact, the Walsh Second Circuit case, ruled . . . that we can't be in the business of determining what speech is in time and what speech is out of time or untimely . . . because in the heat of political speech, speech is at its zenith, close in time to the election. And, deciding which speech is timely and which speech is not timely . . . is akin to deciding what speech is important and not important. So, in that case, New York Progress and Protection Pact, the lawsuit wasn't filed until two weeks after Joe Loda . . . was nominated as the Republican nominee. And, the timeliness argument was raised and the Second Circuit disagreed, despite the fact the District Court saying . . . the lawyers involved were all smart political operatives. They had been around for a long time. They saw this coming. The claim didn't arise until they decided on a candidate who had the possibility of winning. And so, I think we were bringing our lawsuit far in advance of September. We brought our lawsuit in April, several months before July and certainly more than enough time before November. What's the schedule that you now have for briefing? What's been done and what remains to be done? Your Honor, we filed our opening brief yesterday. We would happily propose something along the lines of a ten-day response time or a fourteen-day response time. Allow us, you know, five days to file a reply brief and have oral argument the week of June 25th. That's what we would propose. At least the matter submitted to the court. If the court would rather have it submitted on the papers, that's fine. We would request oral argument to be heard the week of June 25th. June 25th? Yes. All right. We don't hold court in July and we don't begin until mid-August again. So, we'll have all of this in mind. Thank you very much. You've reserved one minute. Thank you, Your Honor. Let's hear from Ms. Clark. Good afternoon, Your Honors. So, the fact that an election is upcoming does not in and of itself create an emergency. The one donor that Upstate Jobs Party states that it has who is willing and ready to donate upwards of the $44,000 that he's able to donate is also the founder of Upstate Jobs. He founded it in 2016 and actually is on record from 2016 taking umbrage at the ballot access issue that he is now bringing a lawsuit over. So, the delay of nearly two years after this issue became problematic for him and now we are approaching the beginning of the petitioning period, there was no need for that kind of delay in this circumstance. How long do you need? So, on the opposition paper, we requested a minimum of 30 days from the submission of their brief for us to file a response. If we were to have 30 days, as my opponent mentioned, he filed their brief yesterday. If we were to have 30 days from that time, then that would still provide some time for the decision to be decided in advance of the beginning of the petitioning period. You did already file papers in the district court that would look, presumably would resemble what we would see here. We did file papers in the district court. In the district court, it was unduly rushed as well, so it would not have the benefit of a full briefing. But, you know, yes, we did file papers in the district court. And so, you know, if this court agrees with appellants that there is in fact an emergency here, which we would dispute and did dispute in our opposition, then certainly we would request the minimum of 30 days. But, as Your Honor stated, there's nothing that is stopping appellants from proceeding on July 10th. As we outlined in our opposition papers, the money that they will have on hand is certainly sufficient to potentially get their nominee on the ballot and certainly to begin the petitioning process. So this idea that if this is not decided by July 10th, they cannot commence this electoral activity is simply incorrect. There's nothing in the record that indicates that they would not be able to begin. And all the evidence we have about the cost of statewide petitioning indicates that with the $44,000 contribution that Mr. Babinec states that he's ready to give, they would be able to pursue a completely fulsome statewide petitioning process. How about two weeks, 14 days? I would reiterate our request that we have 30 days. Two weeks is more than enough, right? You've already done much of the research. Of course, if the court decides that this is an emergency, then we will do the briefing that the court requests. We may not decide it's an emergency. We may just think it's a reasonable schedule under the circumstances. I think under the circumstances, it's not a reasonable schedule because the circumstances have been created by plaintiffs sitting on their hands. Two weeks as opposed to four weeks are a burden to you? Two weeks is a burden to us because we have this, you know, plaintiff brings a series of challenges to multiple parts of the election law. And we are coordinating with our client agency to fully discuss and review, you know, the challenges. And so considering the speed with which the district court moved, we have not yet had an opportunity to do that. Is it fair to say this is not the only case in your office? This is not the only case in our office, no. All right. Thank you, Your Honor. You're from the Northern District? Where is your office? Oh, I'm with the Attorney General's Office of the State of New York. I'm here from Albany. From Albany. Yes, sir. All right, thanks. Thank you. Okay, one minute. Thank you, Your Honor. I'd like to point out $44,000 is just not sufficient to get the requisite number of signatures. The statute requires 15,000 signatures statewide, but as Lerman notes and as Chauvey, New York State Board of Election notes, you need to get far more than that to provide yourself a cushion from the inevitable litigation that is to follow. So really you need two to three times the amount, and that's where I'm getting the number of $45,000. So really you're looking at 45,000 signatures, and you're looking at approximately $225,000 in order to obtain the requisite number of signatures. I'd like to talk about the untimeliness. You have two issues. One, the defendants say we're untimely, and the other that our claim is speculative. It can't be both. Either A, according to them, we're bringing our lawsuit too late or we brought our lawsuit too soon, and I submit to the court that we brought our lawsuit just in time as when our claim ripened. Thank you, Your Honor. Thank you very much. We reserve the decision.